UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOUNTAIN CASCADE INC,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant.<br>_____/ | No. C-13-03702 DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS AND REMANDING CASE TO SAN MATEO COUNTY SUPERIOR COURT** |

    This matter comes before the court on Defendant City and County of San Francisco's motion to dismiss Plaintiff Mountain Cascade, Inc.'s first amended complaint and Plaintiff's motion to remand. [Docket Nos. 17, 26.] The court held a hearing on November 14, 2013, during which the parties were given an opportunity to present oral argument. For the reasons below, Defendant's motion to dismiss is granted in part and the court remands this case to Superior Court of the State of California, County of San Mateo. Plaintiff's motion to remand is denied as moot.

**I. Background**

    Plaintiff Mountain Cascade, Inc. ("MCI") makes the following allegations in its first amended complaint ("FAC"), all of which are taken as true solely for purposes of Defendant City

and County of San Francisco's ("San Francisco") motion to dismiss.[1] On December 15, 2005, MCI, a general engineering contractor, entered into a contract with San Francisco, acting through the General Manager of the San Francisco Public Utilities Commission ("SFPUC"), for construction work known as Bay Division Pipeline No. 5 Reliability Upgrade, Contract No. WD-2542 (the "Contract"). (FAC ¶ 1, 5; Ex. A; Ex. B at 1.) The project involved the installation of nine miles of 60" welded, mortar-lined and coated steel pipe (the "Project") through East Palo Alto, Menlo Park, San Mateo County, and Redwood City. (FAC ¶¶ 5, 6.) The total awarded contract amount was $52,183,400. (FAC ¶ 7.)

The contract contained a provision that MCI agreed "to perform the Work in good and workmanlike manner to the satisfaction of the GENERAL MANAGER [of SFPUC], . . . and to otherwise fulfill all of CONTRACTOR's obligations under the Contract Documents, as and when required under the Contract Documents to the satisfaction of the GENERAL MANAGER." (FAC Ex. A at 00520-1.)

MCI commenced welding in May 2010. (FAC ¶ 10.) On or around January 21, 2011, San Francisco informed MCI that certain welds did not conform with the plans, specifications, and approved submittals for the Project. As of that date, San Francisco and the Project's inspectors had accepted four miles of the completed pipeline. (FAC ¶ 12.) On or around January 26, 2011, San Francisco ordered MCI to stop welding operations effective January 27, 2011, based on deficiencies in the welds. (FAC ¶ 14.) On or around May 13, 2011, San Francisco notified MCI that it rejected all interior and exterior welds on the Project placed prior to January 26, 2011 until they were inspected for compliance with Contract requirements. (FAC ¶ 17.) San Francisco had a contractual duty to inspect the welds before allowing MCI to cover and backfill them, and MCI alleges that San Francisco represented that the welds were accepted and that MCI could cover the welds and backfill the area, even though San Francisco knew that the welds were unacceptable and/or that it would require MCI to uncover the welds. (FAC ¶¶ 18, 22.)

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Ultimately, San Francisco required MCI to remove and replace 628 interior and 94 exterior pipe joint welds, even though MCI submitted expert opinions that repair of the welds was appropriate. (FAC ¶ 27.) MCI alleges that San Francisco's order of removal and replacement of the welds was contrary to the requirements of the specifications, the Contract, code, and applicable welding industry standards. (FAC ¶ 27.) MCI further alleges that San Francisco's acts and omissions caused substantial delay in the completion of the Project. (FAC ¶¶ 28, 29.)

MCI filed its complaint in state court on June 11, 2013, alleging seven causes of action. San Francisco removed the case to federal court on August 9, 2031. MCI filed a first amended complaint on September 18, 2013, alleging causes of action for 1) breach of contract; 2) violation of the Equal Protection Clause of the United States Constitution; and 3) breach of the implied warranty of correctness of project plans and specifications. [Docket No. 19.] San Francisco moves to dismiss MCI's Equal Protection claim on the grounds that such a claim is not cognizable as a matter of law, and to dismiss MCI's claim for attorneys' fees based on its breach of contract claim on the grounds that MCI has no right to recover fees under the Contract. [Docket No. 26.] MCI moves to remand the case to state court. [Docket No. 17.]

## II. Motion to Dismiss

### A. Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record'" pursuant to Federal Rule of Evidence 201. *Id.* at 688-89 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)); *see, e.g., Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed, *see Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), or documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

**B.     Discussion**

MCI's second cause of action alleges a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, based upon a class-of-one theory. MCI asserts that San Francisco treated it differently from other similarly-situated contractors on other projects and that San Francisco's actions were "arbitrary, capricious, intentional and/or reckless." (FAC ¶¶ 64, 65.) Specifically, MCI claims that San Francisco used different inspection standards for MCI's work than for the work of other contractors and subcontractors; rejected MCI's welds but did not reject similar welds by other contractors on other projects on the Pipeline; required MCI to remove and replace welds, rather than repair them, while allowing other contractors to repair allegedly deficient welds; selectively enforced specifications; and materially and unilaterally changed the contract terms, scope of work, and schedules in bad faith. (FAC ¶ 64(a)-(e).) San Francisco argues that a class-of-one equal protection claim by a government contractor is not cognizable as a matter of law.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A "class-of-one" equal protection claim, which does not depend on a suspect classification such as race or gender, arises where the plaintiff was (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Such circumstances state an Equal Protection claim because, if a state actor classifies irrationally, the size of the group affected is constitutionally irrelevant." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) (citing *Olech*, 528 U.S. at 564). "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008) (quoting *Hayes v. Mo.*, 120 U.S. 68, 71-72 (1887)).

Class-of-one equal protection claims are not cognizable with respect to all state decisions. In *Engquist*, the Court held that "the class-of-one theory of equal protection has no application in the public employment context." *Id*. at 607. In that case, a former state employee who had been effectively laid off in a reorganization brought a class-of-one equal protection claim on the grounds that she had been fired for "arbitrary, vindictive, and malicious reasons." *Id*. at 594-95. The Court found that employment decision-making stands in contrast to legislative or regulatory classifications, where "the existence of a clear standard against which departures, even for a single plaintiff, [can] be readily assessed." *Id*. at 602 (discussing *Olech*, 528 U.S. at 564). As the Court explained,

> [t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

5

*Id*. at 603. Therefore, class-of-one equal protection claims are prohibited "in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id*. at 604.

Neither the Supreme Court nor the Ninth Circuit has addressed the question of whether government contractors may bring class-of-one equal protection claims. However, the Court has previously recognized similarities between government employees and government contractors, suggesting that contractors may also be prohibited from bringing class-of-one claims. In *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 673-74 (1996), the Court held that contractors are entitled to the same First Amendment free speech protections as state employees. The Court noted that similarities between both groups are "obvious," in that "[t]he government needs to be free to terminate both employees and contractors for poor performance, to improve the efficiency, efficacy, and responsiveness of service to the public, and to prevent the appearance of corruption." *Id*. at 674.

The only circuit to have considered whether a contractor may bring a class-of-one equal protection claim had "little trouble applying the reasoning in *Engquist*, directed at [] the government-employee relationship, to . . . [a] case involving a government-contractor relationship" to conclude that such a claim is not cognizable. *See Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008). In *Douglas Asphalt*, a contractor construction company brought a class-of-one claim based upon allegations that the Georgia Department of Transportation ("GDOT") intentionally treated it differently without a rational basis. *Id*. at 1273. The contractor alleged that GDOT authorized invalid testing procedures on its paving and resurfacing work, and based upon the test results, asked the contractor to replace defective asphalt, but did not perform those tests on others' work. *Id*. at 1272-73. The contractor also claimed that GDOT singled it out for disparate treatment during the bidding process for another project. *Id*. The Eleventh Circuit, relying on the logic of *Umbehr*, held that *Engquist* controlled, reasoning that "[j]ust as in the employee context, and in the absence of a restricting contract or statute, decisions involving government contractors require broad discretion that may rest 'on a wide array of factors that are difficult to articulate and quantify.'" *Id*. at 1274 (citing *Engquist*, 553 U.S. at 604). Therefore, the court held that the contractor "failed to assert a cognizable right to equal protection." *Id*.; *see also SECSYS, LLC v.*

1  *Vigil*, 666 F.3d 678, 690 (10th Cir. 2012) (questioning "whether class of one doctrine should apply
2  at all in the government contracting context," noting that "it is arguably just a small step from
3  [*Engquist*] to the conclusion the doctrine shouldn't apply when the government interacts with
4  independent contractors – in both circumstances, the government acts in a more proprietorial and
5  less regulatory capacity"); *Intralot, Inc. v. McCaffrey*, No. 1:11-cv-08046, 2012 WL 4361451, at *4-
6  7 (N.D. Ill. Sept. 21, 2012) (applying reasoning of *Douglas Asphalt* and dismissing class-of-one
7  claim based on allegations of differential treatment during bidding process to serve as state lottery
8  manager).

9      San Francisco argues that the facts here are similar to the facts in *Douglas Asphalt*. As in
10 that case, there is a dispute about the quality of the work performed by MCI. Further, like the
11 plaintiff in *Douglas Asphalt*, there is a dispute whether San Francisco had the right to require the
12 defective work be repaired as it demanded. *See Douglas Asphalt*, 541 F.3d at 1272. Therefore, San
13 Francisco urges this court to apply the Eleventh Circuit's reasoning and dismiss MCI's class-of-one
14 claim.

15     MCI does not cite any contrary authority. Instead, MCI argues that the court should not
16 follow *Douglas Asphalt* and attempts to distinguish the facts of this case, stating that "the decisions
17 at issue in that case apparently required discretion." (Pl.'s Opp'n 5 (citing *Douglas Asphalt*, 541
18 F.3d at 1274).) MCI alleges that "San Francisco did not have discretion to vary from the
19 specifications, codes and their application of the inspection standards as set forth in the construction
20 documents," (Pl.'s Opp'n 6; *see also* FAC ¶ 65), and argues that the plans, specifications, and
21 applicable welding standards constitute a "clear standard against which departures, even for a single
22 plaintiff, could be readily assessed." (Pl.'s Opp'n 6 (quoting *Engquist*, 553 U.S. at 602).)

23     First, contrary to MCI's assertion, the court in *Douglas Asphalt* did not point to any special
24 discretion on the state's part to conclude that the contractor's class-of-one claim was not cognizable.
25 *See Douglas Asphalt*, 541 F.3d at 1274. As in this case, the contract between GDOT and the
26 contractor specified standards to which the work was to be performed. *See id*. at 1271-72 (the
27 paving and resurfacing work was "to be performed using a specified amount of hydrated lime in the
28 asphalt mix," and test results later showed insufficient lime in contractor's asphalt). Moreover,

1  MCI's allegation about San Francisco's lack of discretion is contradicted by documents attached to
2  the FAC. First, the Contract states that MCI agrees "to perform the Work in good and workmanlike
3  manner to the satisfaction of [SFPUC]." (FAC, Ex. A at 00520-1.) In its January 24, 2013 amended
4  Government Code claim, MCI stated, "This contract constitutes a 'satisfaction contract,' which
5  provided that *SFPUC be satisfied with the performance*. That is, performance is tested by the
6  question as to whether a reasonable man would be satisfied with the same . . ." (FAC ¶ 43, Ex. C at
7  5 (emphasis added, citation omitted); *see also* FAC ¶ 44, Ex. D (Apr. 10, 2013 Government Code
8  claim) at 13 (same).) MCI also asserts in its Government Code claims that San Francisco had "the
9  *sole and unfettered* authority" to reject "Non-conforming Work" and to "accept the Work." (FAC
10 Ex. C at 4 (emphasis added).) MCI attempts to portray San Francisco's rights under the Contract as
11 the formulaic and mechanical application of standards to MCI's work, but a "satisfaction contract"
12 which conveys "sole and unfettered authority" to one party is simply not consistent with such a
13 characterization. MCI's own assertions belie the allegation that San Francisco lacked discretion to
14 accept or reject MCI's work under the Contract. *See Steckman*, 143 F.3d at 1295-96 (the court is
15 "not required to accept as true conclusory allegations which are contradicted by documents referred
16 to in the complaint."). It is this exercise of discretionary decision-making that *Engquist* and *Douglas*
17 *Asphalt* held is immune from a constitutional challenge, and the court is persuaded that *Engquist*
18 applies to government-contractor relationships for the same reason that it applies to government-
19 employee relationships. *See Douglas Asphalt*, 541 F.3d at 1274 ("decisions involving government
20 contractors require broad discretion that may rest 'on a wide array of factors that are difficult to
21 articulate and quantify.'" (quoting *Engquist*, 553 U.S. at 604)). Accordingly, MCI's class-of-one
22 equal protection claim is dismissed with prejudice.[2]

23 As the court grants San Francisco's motion to dismiss the sole federal claim over which it
24 has original jurisdiction with prejudice, the court declines to exercise supplemental jurisdiction over

---

[2] As the court dismisses MCI's equal protection claim with prejudice, it need not reach San Francisco's arguments regarding the sufficiency of MCI's allegations regarding San Francisco's liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

MCI's remaining state law claims.³ *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); *see also Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1137 (9th Cir. 2011) *reh'g en banc granted*, 663 F.3d 1032 (9th Cir. 2011) *on reh'g en banc*, 693 F.3d 896 (9th Cir. 2012). Accordingly, the court remands this case to state court.

### III. Conclusion

San Francisco's motion to dismiss is granted in part. The court dismisses MCI's equal protection claim with prejudice. This case is remanded to the Superior Court of the State of California, County of San Mateo. MCI's motion to remand is denied as moot.

IT IS SO ORDERED.

Dated: November 18, 2013



_____
DONNA M. RYU
United States Magistrate Judge

---

³ The remainder of San Francisco's motion to dismiss is addressed to MCI's claim for attorneys' fees, which is based upon its breach of contract claim. (Def.'s Mot. 10-13; FAC ¶ 59.) As the court declines to exercise jurisdiction over MCI's state law claims, it does not reach Defendant's motion to dismiss the attorneys' fees claim.